UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEE J. WEEDA,  )
    Plaintiff,  )  CASE NO. C11-0390-JCC
    v.  )
      )  REPORT AND RECOMMENDATION
MICHAEL J. ASTRUE, Commissioner  )  RE: SOCIAL SECURITY DISABILITY
of Social Security,  )  APPEAL
    Defendant.  )

Plaintiff Lee J. Weeda proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for further proceedings.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1972.[1] He has a high school diploma and studied

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -1

culinary arts. He previously worked as a rope machine operator and fast food worker. (AR 19.)

Plaintiff filed an application for DIB on June 30, 2006, alleging disability beginning June 1, 2006. He is insured for DIB through December 31, 2011. (AR 11, 13.) Plaintiff's application was denied at the initial level and on reconsideration. Plaintiff timely requested a hearing.

On August 5, 2009, ALJ Marguerite Schellentrager held a video hearing, taking testimony from plaintiff and a vocational expert. (AR 21-51.) On September 14, 2009, the ALJ issued a decision finding plaintiff not disabled. (AR 11-20.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on January 28, 2011 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease, migraine headaches, vertigo, affective disorder, post traumatic stress disorder, and personality disorder severe. Step three asks whether a claimant's impairments

meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to lift and/or carry ten pounds occasionally and less than ten pounds frequently, able to stand and/or walk up to two hours in an eight hour workday, and able to sit up to six hours in an eight hour workday. Plaintiff should not interact with the general public and he should have limited contact with co-workers and supervisors to only occasionally, or thirty percent of the time. Plaintiff is also limited to simple repetitive tasks involving things, not people. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as an eyeglass frame polisher and addresser.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which

supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject the opinions of several examining physicians, failed to include all necessary exertional limitations in the RFC assessment, and did not provide clear and convincing reasons to support the finding that he is not fully credible. He requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Evaluation of Physical Limitations</u>

Finding plaintiff's degenerative disc disease severe at step two of the sequential evaluation, the ALJ assessed plaintiff's physical RFC capacity to include the ability to lift and/or carry ten pounds occasionally and less than ten pounds frequently, to stand and/or walk up to two hours in an eight hour workday, and to sit up to six hours in an eight hour workday. The ALJ also included additional limitations related to his mental impairments.

Plaintiff argues the ALJ erred by failing to include limitations on his ability to turn and bend his neck, as well as a limitation in overhead reaching. Although the ALJ indicated the intention to give substantial weight to the functional assessment opinion of Dr. Heilbrunn (AR 17, 301), plaintiff contends the ALJ neither included Dr. Heilbrunn's neck and reaching limitations in the RFC, nor explained the omissions.

Dr. Heilbrunn conducted a disability evaluation examination on August 22, 2007, assessing plaintiff, *inter alia*, as being unable to "accomplish above-shoulder-level reaching on a continuous and/or frequent basis" and noted that "[t]he decrease in cervical range of motion

REPORT AND RECOMMENDATION
PAGE -4

would affect activities in a sedentary position." (AR 301.) Although the ALJ found Dr. Heilbrunn's evaluation to be "thorough and well-reasoned…consistent with objective findings throughout the record and the [plaintiff]'s reported level of physical activity", she did not incorporate these particular limitations in the RFC.

The Commissioner argues that plaintiff has not met his burden of showing that any error in this regard was harmful. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (recognizing application of harmless error in Social Security context where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.") The Commissioner cites the *Dictionary of Occupational Titles* (4th ed. 1991) (DOT), *available at* 1991 WL 679267, 1991 WL 671797, as describing the positions of eyeglass frame polisher and addresser as requiring "no more than" frequent reaching. As to plaintiff's decreased range of cervical motion, the Commissioner argues that Dr. Heilbrunn did not explain how this limitation would affect plaintiff's ability to perform sedentary work activities.

However, the Court agrees with plaintiff that the ALJ's failure to either include or specifically reject the cervical range of motion and reaching limitations opined by Dr. Heilbrunn undermine the adequacy of the hypothetical posed to the vocational expert (VE). A hypothetical posed to a VE must include all of the claimant's functional limitations supported by the record. *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)). A VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th

REPORT AND RECOMMENDATION
PAGE -5

Cir. 1991)). Plaintiff notes that both jobs require "frequent" reaching, which would be precluded by Dr. Heilbrunn's limitations. Further, plaintiff argues that these additional limitations erode the occupational base potentially available to him and as such, must be considered by the ALJ. Social Security Ruling (SSR) 83-12 and SSR 83-14. Because the vocational hypothetical was incomplete, the VE's assumption about plaintiff's functional abilities was flawed.

The Court finds it necessary to remand this case to allow the ALJ to address Dr. Heilbrunn's opinion regarding plaintiff's decreased cervical range of motion and above-the-shoulder reaching limitations. If the ALJ's step five finding is implicated as a result of that consideration, further vocational evidence may also be required.

<u>Medical Opinion Evidence – Mental Impairments</u>

Plaintiff argues the ALJ erred in considering the medical opinion evidence regarding his mental impairments. In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751).

A.  Anselm Parlatore, M.D.

Dr. Parlatore examined and evaluated plaintiff on October 31, 2006. (AR 211-14.) Considering the opinion of Dr. Parlatore, the ALJ found:

> With regard to the [plaintiff]'s mental impairments, Anselm A. Parlatore, M.D., evaluated the [plaintiff] in October of 2006. Based on his interaction with the [plaintiff], Dr. Parlatore concluded that the [plaintiff]'s psychological problems rendered him moderately to markedly impaired in terms of stress, focus, concentration, pace and persistence, and moderately impaired in terms of intellectual capacity to understand, remember, and follow both complex and simple instructions. Dr. Parlatore also noted mild impairment in the [plaintiff's] ability to carry out specific tasks in a timely and consistent manner, as well as marked impairment in interacting with others. Although Dr. Parlatore did identify the [plaintiff]'s limitations in the areas of concentration, persistence, and pace, and interacting with others, the [plaintiff]'s reported activities and other findings in the record do not support such significant limitations. However, because the record does support at least moderate limitations in the areas of social functioning and concentration, persistence, and pace, the undersigned has given limited weight to Dr. Parlatore's assessment, to the extent that it is supported by objective evidence elsewhere in the record.

(AR 18.)

Plaintiff contends the ALJ's rationale for disregarding Dr. Parlatore's opinions is not specific and legitimate, nor supported by substantial evidence. Plaintiff disputes the ALJ's conclusion that Dr. Parlatore's opinions regarding plaintiff's psychiatric impairments are not supported by objective evidence in the record, noting the evaluations of Drs. Hakeman and Lind. *See infra.* Plaintiff argues if the ALJ properly credited Dr. Parlatore's findings, his mental impairments would have been found presumptively disabling under the criteria of the Listing of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 (Affective

Disorders), 12.06 (Anxiety Related Disorders), and 12.08 (Personality Disorders). However, plaintiff notes that the ALJ did not discuss Dr. Parlatore's opinions at step three of the sequential evaluation, but at step four, in the context of evaluating her RFC. Plaintiff further argues the ALJ's interpretation of Dr. Parlatore's Global Assessment of Functioning (GAF) finding is *per se* erroneous, conflicting with the Diagnostic and Statistical Manual of Mental Health Disorders (4th ed. 2000) (DSM-IV). Plaintiff also disputes the ALJ's disregard of Dr. Parlatore's opinions as inconsistent with his reported activities.

The Commissioner contends the statements of plaintiff and his mother are substantial evidence supporting the ALJ's finding that plaintiff's activities contradict Dr. Parlatore's assessment of his mental functional limitations. The Commissioner also suggests plaintiff's performance on testing administered by Dr. Lind (AR 234-35, 241-42) provides additional substantial evidence support for the ALJ's assessment of Dr. Parlatore's opinion, as well as the opinion of reviewing psychologist Bruce Eather, Ph.D. (AR 260-62). However, plaintiff accurately points out that none of this evidence was relied on by the ALJ. The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ - not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing, *inter alia, Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases…")).

The Court finds the ALJ did not sufficiently explain the weight given to the opinion of Dr. Parlatore. While it may be appropriate to assign less weight to the opinion of a medical expert that is not supported by the other evidence, 20 C.F.R. §§ 404.1527(d)(4), 416, 927(d)(4)

("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."), the ALJ here does not explain which of plaintiff's reported activities or "other findings in the record" undermine Dr. Parlatore's opinions about plaintiff's mental impairments. (AR 18.)

Furthermore, the Court finds that plaintiff has met his burden of showing the error was not harmless. Dr. Parlatore's opinion regarding the severity of plaintiff's mental impairments could, if accepted by the ALJ, result in a step three finding of disability under the Listing of Impairments, and may have impacted the assessment of plaintiff's RFC at step four. On remand, the ALJ should more fully explain the weight given to Dr. Parlatore's opinion at all relevant steps of the sequential evaluation.

B.  Drs. Hakeman, Eisenhauer, and Lind

Susan M. Hakeman, M.D. conducted a psychiatric examination and evaluation on June 23, 2006. (AR 206-09.) R. Renee Eisenhauer, Ph.D. completed a Physician's Certification for Medicaid on June 28, 2006. (AR 210.)[2] Ellen Walker Lind, Ph.D. conducted a psychological examination and evaluation on May 10, 2007 and on June 22, 2007, conducting testing on the latter occasion. (AR 230-33, 237-45.)

The ALJ discussed the opinions of these evaluators as follows:

> The record also contains three assessment that were provided pursuant to the [plaintiff]'s receipt of public assistance payments in June of 2006 and May of 2007. On June 20, 2006, Susan M. Hakeman, M.D. indicated that the [plaintiff] had marked limitations in understanding, remembering, and following complex instructions, interacting appropriately in public, and responding appropriately and tolerating the pressures and expectations of a

---

2 The record does not clearly indicate whether Dr. Eisenhauer's evaluation was based on an examination.

normal work setting. She also noted moderate limitations in areas such as learning new tasks, exercising judgment and making decisions, relating appropriately to co-workers and supervisors, and maintaining appropriate behavior. On June 28, 2006, R. Renee Eisenhauer, Ph.D. supported the [plaintiff]'s application for Medicaid and indicated that his depression was of marked intensity with moderate to marked limitations. She specifically noted that the [plaintiff] has difficulty being around people and is distractible. Finally, in May of 2007, Ellen Walker Lind, Ph.D. noted that the [plaintiff] had marked limitations in areas such as exercising judgment and making decisions, and responding appropriately to and tolerating the pressures and expectations of a normal work setting. She also noted that the [plaintiff] had moderate limitations in understanding, remembering, and following complex instructions, learning new tasks, perform [sic] routine tasks, relating appropriately to co-workers, supervisors, and the general public, caring for himself, and maintaining appropriate behavior.

Although the assessments by Dr. Hakeman, Dr. Eisenhauer, and Dr. Lind are more restrictive in some areas than the residual functional capacity outlined above, they are generally consistent in demonstrating that the [plaintiff] has some significant limitations in cognitive and social functioning, but they do not preclude all work activity. To that extent, these assessments have been given limited weight in assessing the [plaintiff]'s mental residual functional capacity.

(AR 18, internal citations omitted.)

Plaintiff argues this reasoning is not legally sufficient, and applies an incorrect legal standard. As with the ALJ's failure to accept the opinions of Dr. Parlatore, plaintiff argues that a crediting of the opinions of Drs. Hakeman, Eisenhauer and Lind would have required the ALJ to find that his mental impairments met the listing requirements of §§ 12.04, 12.06, or 12.08. Plaintiff further argues that the mental limitations opined by these doctors, if properly included in his RFC, would have eroded the occupational base to the extent that a finding of disability would have resulted.

The Commissioner contends the ALJ adequately stated her interpretation of this opinion evidence, followed by appropriate findings. The Court, however, disagrees. While the ALJ

REPORT AND RECOMMENDATION
PAGE -10

did summarize the opinions of the three doctors, the ALJ does not provide a reasoned assessment of the opinions. Although the ALJ stated that doctors' opinions about plaintiff's mental limitations "are generally consistent in demonstrating that the [plaintiff] has some significant limitations in cognitive and social functioning," the ALJ gives no reason for giving them "limited weight". (AR 18.) Rather, the ALJ's comment that the limitations "do not prelude all work activity" seems to be the ALJ's vocational interpretation rather than an actual rejection of the doctors' opinions.

Plaintiff also notes the omission of any discussion of Dr. Lind's June 22, 2007 report in the decision. (AR 237-45.) Although the Commissioner argues plaintiff fails to demonstrate how any part of the report differs from the doctor's May 10, 2007 report (AR 230-34), the Court does not conclude that the evidence was neither significant, nor probative. *Flores,* 49 F.3d 570-71 (an ALJ may not reject "'significant probative evidence'" without explanation) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

On remand, the ALJ should discuss the opinions of Dr. Hakeman, Dr. Eisenhauer, and Dr. Lind, explaining the weight given to each, and resolving any conflicts in the medical evidence. *Magallanes,* 881 F.2d at 753 (in evaluating physicians' opinions, an ALJ may meet the burden of setting forth "specific, legitimate reasons…by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (citing *Cotton v. Bowden*, 799 F2d 1403, 1408 (9th Cir. 1986)).

<u>Credibility Determination</u>

Plaintiff contends the ALJ's reasons for disregarding his testimony of pain and limitations were not legally sufficient. Explaining the conclusion that the plaintiff's

statements were not fully credible, the ALJ found:

> The [plaintiff]'s reported activities of daily living are not consistent with his allegations of total disability and his reports of social phobia. The [plaintiff] testified at the hearing that he gets along with his landlady and her husband, and he noted that he has traveled with them throughout the Southwest. In addition, he spends his days reading, doing ceramics and creative writing, and drawing. He also reported going to the library at times. These activities demonstrate that the [plaintiff] would be capable of performing sedentary work activities with the additional limitations outlined above.
>
> It is noted that a recent review of medications indicates that the [plaintiff]'s only prescribed medication is for migraine headaches. This would suggest that the [plaintiff]'s impairments are not more limiting than found in this decision.

(AR 17, internal citations omitted.)

Plaintiff disputes the ALJ's interpretation of the nature of his daily activities, arguing that different inferences should be drawn about the significance of his ability to perform these activities as they relate to his ability to work. However, even though another interpretation of the evidence might exist, the Court must uphold the ALJ's interpretation if it is rational. *Thomas,* 278 F.3d at 954. An ALJ is entitled to draw inference "logically flowing from the evidence" and may properly take into account a claimant's level of activity when assessing disability. *Magallanes*, 881 F.2d at 758; *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

In this particular case, however, the ALJ's reassessment of the medical evidence may implicate the evaluation of the credibility of plaintiff's testimony regarding his symptoms and abilities. Therefore, on remand, the ALJ should explain the impact of this reassessment, if any, on the consideration of plaintiff's credibility.

/ / /

REPORT AND RECOMMENDATION
PAGE -12

## **CONCLUSION**

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

DATED this 8th day of November, 2011.

*Mary Alice Theiler*
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -13